Estate of Joseph F. deCastro, deceased, Kings County Trust Company, Executor v. Commissioner.
Estate of Joseph F. deCastro v. Commissioner
Docket No. 5071.
United States Tax Court
1945 Tax Ct. Memo LEXIS 157; 4 T.C.M. (CCH) 636; T.C.M. (RIA) 45210; June 19, 1945
*157 John H. Schmid, Esq., 26 Court St., Brooklyn 2, N. Y. for the petitioner. William F. Evans, Esq., for the respondent. SMITH Memorandum Findings of Fact and Opinion SMITH, Judge: This proceeding involves a deficiency in estate tax in the amount of $5,110.93. The only question in issue is whether the estate is entitled to deduct the amount of certain charitable bequests to be paid out of the funds of two testamentary trusts after the death of the life beneficiaries, where the trustee was empowered to invade the principal of the trusts for the benefit of the primary life beneficiary. Findings of Fact The petitioner is the executor of the estate of Joseph F. deCastro who died testate a resident of Brooklyn, New York, on November 2, 1941. The estate tax return was filed with the collector of internal revenue for the first district of New York. In his will the testator provided for a division of his residuary estate into two equal parts, one of which, referred to as Trust A, was to be held in trust for the benefit of his wife, Fannie deCastro, for life and after her death for the benefit of her nephew, Louis J. Murphy, for life. Upon the death of the survivor of *158 them the trust was to terminate and 90 percent of the then remaining principal was to be paid to certain named charitable, educational and religious organizations. The remaining 10 percent was to go to a named individual, if living at that time, or, if not, the whole remainder was to go to the charities named. The other one-half of the residuary estate, referred to as Trust B, was to be held in trust for the benefit of the wife for life and after her death for the benefit of her niece, Irene Murphy, for life. That trust was to terminate upon the death of the survivor of them and the remaining principal was to be paid to certain named charities. Article Third of the will contained the following provision for the invasion of the corpora of the trusts: "Notwithstanding any of the provisions hereinbefore made, if, during the life of my wife, FANNIE deCASTRO, due to her illness, accident or other unforeseen emergency, the income of the two (2) trusts shall not be sufficient to amply provide for her needs, then and in that event I authorize and absolutely direct my Trustee to apply from the principal of the two (2) trusts, in equal proportions, such sum or sums as, in the sole discretion *159 of my Trustee, will amply provide for her needs. I especially direct that no one shall have the right to call in question the propriety or the amount so applied for my wife. Upon the death of my wife I direct that my Trustee shall pay her funeral expenses and charge them against the two trusts, in equal proportions.' Kings County Trust Company, petitioner herein, was named trustee of both trusts. The trustee was authorized to continue to hold any securities owned by the decedent at the time of his death or securities received in exchange therefor as long as it seemed for the best interests of the trusts. At the date of testator's death his wife was 75 years of age, Louis J. Murphy, her nephew, was 41 years of age, and Irene Murphy, her niece, was 45 years of age. The net income of the trusts for the years 1942, 1943, and 1944 was as follows: Year
Trust A
Trust B
1942
$2,208.89
$2,206.40
1943
2,367.93
2,390.40
1944
2,322.28
2,378.32
$6,899.10
$6,975.12
Since decedent's death his wife has lived within the income distributed to her by the trustee and has accumulated about $600 of such income. With a cash bequest of $2,500, which she received under *160 decedent's will, she had on hand in February, 1945, about $1,250 in United States bonds, $1,000 in a savings bank, and about the same amount in a checking account. There was also approximately $1,700 of undistributed income in the trusts. She has no other property or income of any substantial amount. The combined assets of the trusts had a value of $83,166.74 at the time of decedent's death and a value of $117,354.81 at March 1, 1945. The trust investments consisted principally of mortgages, stocks, and bonds. Since decedent's death his wife has lived at a hotel where she pays $120 per month for her room. Her meals cost about $3 a day. She dresses moderately and goes out very little. A deduction was claimed in the estate tax return of $31,960 on account of the bequests to charity. The respondent has disallowed the deduction. The net estate as determined by the respondent was $44,957.60. Opinion We think that the question here is controlled by the decision of the Supreme Court in . In that case the decedent (Ozro M. Field) left the residue of his estate in trust for the benefit of his wife for life *161 and upon her death the major portion of the trust estate was to go to certain named charities. The trustee was given the discretionary power to invade the corpus, "for the comfort, support, maintenance, and/or happiness of my said wife." It was held that because of the power of the trustee to invade the corpus the amount of the charitable bequests was unascertainable and therefore unallowable. The court pointed out that the Commissioner's regulations, articles 44 and 47 of Regulations 80, properly limit the deductions available to "charitable donors who wished to combine some private benefaction with their charitable gifts" to those "presently ascertainable, and hence severable from the interest in favor of the private use," and "to that portion, if any, of the property or fund which is exempt from an exercise of such power." The court said in its opinion: Whatever may be said with respect to computing the present value of the bequest of the testator who dilutes his charity only to the extent of first affording specific private legatees the usufruct of his property for a fixed period, a different problem is presented by the testator who, preferring to insure the comfort and happiness *162 of his private legatees, hedges his philanthropy, and permits invasion of the corpus for their benefit. At the very least a possibility that part of the principal will be used is then created, and the present value of the remainder which the charity will receive becomes less readily ascertainable. Not infrequently the standards by which the extent of permissible diversion of corpus is to be measured embrace factors which cannot be accounted for accurately by reliable statistical data and techniques. Since therefore, neither the amount which the private beneficiary will use nor the present value of the gift can be computed, deduction is not permitted. Cf. . * * * * *
The salient fact is that the purposes for which the widow could, and might wish to have the funds spent do not lend themselves to reliable prediction. This is not a "standard * * * fixed in fact and capable of being stated in definite terms of money." Cf. Ithaca Trust Co. v. United States, supra [279 U.S. 151]. Introducing the element of the widow's happiness and instructing the trustee to exercise its discretion with *163 liberality to make her wishes prior to the claims of residuary beneficiaries brought into the calculation elements of speculation too large to be overcome, notwithstanding the widow's previous mode of life was modest and her own resources substantial. We conclude that the commissioner properly disallowed the deduction for estate tax purposes. While the conditions under which the corpora of the trusts here might be invaded, that is, in the event of "illness, accident or other unforeseen emergency," were somewhat more restricted than in the Merchants National Bank of Boston case, still we can not say that they were, or are, so highly improbable of occurrence as to leave no uncertainty as to the vesting of or the amount of the charitable bequests. And once the way to the invasion is open it is entirely in the discretion of the trustee as to what amounts "will amply provide for her [the wife's] needs." Here there is no standard of measure of the amounts that might be withdrawn, as in . The fact that the income of the trusts so far has proven ample for the wife's needs and that there has not yet occurred any sickness, accident *164 or other emergency requiring additional funds for the wife is, of course, no guaranty that these good fortunes will continue for her lifetime. We find no error in the respondent's disallowance of the deduction claimed on account of the charitable bequests. See . Decision will be entered for the respondent.